IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No. 1:23-cv-01538-JGLC

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

THE DUGOUT N.Y. LLC,

    Defendant.

## [PROPOSED] FINAL JUDGMENT AND PERMANENT INJUNCTION

**THIS CAUSE** is before the Court upon plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), Motion for Default Final Judgment (the "Motion") [D.E. __]. The Court has considered the Motion, has noted the Clerk's default against defendant The Dugout N.Y. LLC ("Defendant") , and is otherwise advised in the premises.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court concludes that Plaintiff has met its burden of showing that it is entitled to a final default judgment as to Defendant. Plaintiff has also met its burden of showing that it is entitled to permanent injunctive relief against Defendant as specified herein.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

### I.    Findings of Fact

    1.    Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

    2.    Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly

fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

3. Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

4. Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

5. Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used). Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e. grocery stores, meat/dairy sellers, etc.).

6. Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

7. This lawsuit concerns one (1) photograph titled "ChickenWingHot004_ADL" (the "Work") owned by Plaintiff for which Plaintiff serves as the licensing agent. The Work is available for license on the above-stated terms.

8. The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with

the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 26, 2017, and was assigned Registration No. VA 2-046-824.  A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

9. Defendant owns and operates a sports bar restaurant and party hall.

10. Defendant advertises/markets its business primarily through its website (https://www.thedugoutny.com/), social media (e.g. https://www.facebook.com/TheDugoutNY/), and other forms of advertising.

11. On a date after Plaintiff's above-referenced copyright registration of the Work, Defendant published the Work on its website (at https://www.thedugoutny.com/) as a homepage display photo:



12. A true and correct copy of screenshots of Defendant's website, displaying the copyrighted Work, are attached to the Complaint as Exhibit B thereto.

13. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use.

14. Defendant utilized the Work for commercial use – namely, in connection with the marketing of its business.

15. Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

16. Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc. To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

17. Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

18. Through its ongoing diligent efforts to identify unauthorized use of its photographs,

Plaintiff first discovered Defendant's unauthorized use/display of the Work in approximately July 2021.

19.  Following Plaintiff's discovery of Defendants' infringement, Plaintiff retained counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) an initial infringement notice to Defendant to notify it of the impermissible use.

20.  Undersigned counsel received a letter from Defendant's counsel to try and resolve the matter. After responding to the letter by trying to negotiate a reasonable licensing fee, undersigned counsel sent three (3) follow-up e-mails, yet Defendant never meaningfully responded to those notices/communications.

**II.   Conclusions of Law**

   *A.   Applicable Legal Standards*

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, under Federal Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Second, under Rule 55(b), the plaintiff may apply for entry of default judgment by the clerk "[i]f the plaintiff's claim is for a sum certain," or by the court "[i]n all other cases." Fed. R. Civ. P. 55(b)(1), (2).

By failing to answer the Complaint, a defendant is deemed to have admitted the factual allegations in the Complaint. See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); Rolex Watch, U.S.A., 2011 U.S. Dist. LEXIS 32249, at *5-6,

("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."). But before entering default judgment, the Court must review the allegations to determine whether a plaintiff has stated a valid claim for relief. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

### B. *Copyright Infringement*

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement [has] two elements [that] must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, (1991)).

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c). Here, the Complaint alleges that the Work was not registered until later than 5 years from first publication. The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim. See, e.g. Ultra-Images, LLC v. Franclemont, No. 05-60538-CIV, 2007 U.S. Dist. LEXIS 93610, at *11-12 n.3 (S.D. Fla. Dec. 20, 2007) ("Defendants also urge this Court to

find invalidity of the registration because the registration was made over five years after the Jesse Portrait was published…. Based on the record at this stage in the proceeding, the Court cannot find, as a matter of law, that the certificate of registration is invalid."); Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans."). As succinctly explained in Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not ***forbid***[1] a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. Yurman Design, Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright); Telerate Sys., Inc. v. Caro, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). ***In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision***.[2] The copyright-infringement claim survives.

---

[1] Emphasis in original.

[2] Emphasis added.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth in the Complaint. By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

The copying element of an infringement claim has two components. Warner Bros. Entm't Inc. v. RDR Books, 575 F. Supp. 2d 513, 533 (S.D.N.Y. 2008). First, a plaintiff must demonstrate that the defendant copied the plaintiff's work as a factual matter, either through direct or indirect evidence. Id. Second, "the plaintiff must establish that the copying amounts to unlawful or improper appropriation." Id. "The plaintiff demonstrates that the copying is actionable 'by showing that the second work bears a "substantial similarity" to protected expression in the earlier work.'" Id. (quoting Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998).

Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

C.   *Willfulness*

Willful infringement occurs when (1) "the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." Mattel, Inc. v. 2012Shiningroom2012, No. 18-cv-11648 (PKC), 2020 U.S. Dist. LEXIS 176838, at *19 (S.D.N.Y. Sep. 25, 2020) (quoting Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights

because of Defendants' default." Arista Records, Inc. v. Beker Enters., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003); see also Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (inference of willfulness drawn by "defendant's failure to appear and defend this action," particularly in light of plaintiff's allegation of willfulness); Original Appalachian v. Yuil Int'l Corp., 5 U.S.P.Q.2d (BNA) 1516, 1524 (S.D.N.Y. 1987) ("willfulness may be inferred from a defendant's failure to appear and defend in an action such as this"). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendant of its infringement pre-lawsuit. Defendant's refusal to pay a reasonable licensing fee, refusal to substantively communicate, and refusal to participate in this lawsuit demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

### D. *Plaintiff's Damages*

#### 1. **Actual Damages**

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "primarily measured by the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." Cordon Holding C.B. v. Nw. Publ'g Corp.,

2005 U.S. Dist. LEXIS 3860, at *16 (S.D.N.Y. Mar. 9, 2005) (quoting See Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc., 807 F.2d 1110, 1118 (2d Cir. 1986) (internal quotations omitted); see Lorentz v. Sunshine Health Prods., No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010) (actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright.").

The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed. McCarthy v. Stollman, 2010 U.S. Dist. LEXIS 164542, at &16 (S.D.N.Y. Feb. 23, 2010). To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work." Thornton v. J. Jargon Co., 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing Montgomery v. Noga, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model.  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc.  Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their

products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15–20-year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1-2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

As discussed above, Plaintiff first discovered Defendant's infringement of the Work in approximately July 2021 (at which time the Work was published on Defendant's website). Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was

uploaded and removed from Defendant's website. Sources such as the Wayback Machine and inspecting the URL/page source of the website were unhelpful in determining precisely when the Work was published by Defendant. This tremendously hinders Plaintiff's ability to determine its damages because, for each year that Defendant published the Work, Plaintiff would be owed an annual license fee of $11,988.00.

Here, it is only known that the Work was published as of July 2021 (when Plaintiff initially discovered the infringement) and that it remained published by Defendant until at least September 20, 2022 (the date of the screenshot attached to the Complaint as Exhibit B thereto), but not when the Work was first published or when it was removed. Given these facts, the Court finds that the cost for two (2) annual subscriptions (as Plaintiff does not pro-rate the annual commitment for the reasons explained above) is the most accurate measure of Plaintiff's actual damages based on presently-known facts. This amounts to $11,988.00 x 2 = $23,976.00.

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages:

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, Case No. 21-82129-cv-Middlebrooks/Matthewman.  The same analysis was adopted

by multiple courts across the country. See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photograph); Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 1:22-cv-07953-ER, 2023 U.S. Dist. LEXIS 68835, at *25 (S.D.N.Y. Apr. 14, 2023) (awarding $47,952.00 in statutory damages, representing the $11,988.00 annual license fee for 2-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407, at *2 (D. Colo. May 19, 2023) (awarding $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information

necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

The Court agrees with Plaintiff that the fairest beginning measure of Plaintiff's actual damages in this case is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the maximum years of use that copyright will permit. However, in view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, Plaintiff elected to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

### 2. Statutory Damages for Copyright Infringement

Pursuant to 17 U.S.C. § 504(c), Plaintiff has elected to recover statutory damages for Defendant's infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement. Where (as here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages and award 3x – 5x to properly account for statutory damages. See, e.g. Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music,

Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, Case No. 21-82129-cv-Middlebrooks/Matthewman. The same facts as in Patriot Fine Foods apply to this present case. Plaintiff was unable to conduct discovery or gather information. Plaintiff's licensing structure is a strong proxy for calculating damages. Given the circumstances

of the instant case, the Court finds that an award of statutory damages in the amount of ***$47,952.00*** ($23,976.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law. The Court shall apply the same multiplier Judge Middlebrooks applied in Patriot Fine Foods, wherein Judge Middlebrooks doubled the actual damages (the one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter future violations.

### E.   *Costs and Attorneys' Fees*

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate.

The Court finds that an award of attorneys' fees and costs is appropriate here. Defendant's willful conduct, failure to engage Plaintiff in an attempt to pay a reasonable licensing fee, and failure to participate in this lawsuit resulted in unnecessary fees and costs being incurred. The Court has reviewed the declaration of Plaintiff's counsel filed together with the Motion and finds such declaration to support the amount of fees and costs being sought.

The Court finds that the costs sought by the Motion ($603.74) are taxable against Defendant. These costs consist of the filing fee for this lawsuit and the service of process costs.

Having concluded Plaintiff is entitled to attorneys' fees, the Court must now determine the

reasonableness of Plaintiff's requested fee amount. The Court has performed the lodestar analysis and finds that Plaintiff's counsel reasonably expended 8.60 hours in connection with pursuing this matter. The Court further finds that $450.00 is a reasonable hourly rate for Plaintiff's counsel (Daniel DeSouza) in this action given the complexity of the matter, the results obtained, and the experience of Plaintiffs' counsel which the Court found to be substantial. See Farrington v. Jewish Voice Inc., No. 21-CV-1575 (NGG) (AYS), 2022 U.S. Dist. LEXIS 21812, at *15 (E.D.N.Y. Feb. 7, 2022) ("In copyright cases, courts in this district have approved rates between $350 and $500"); Pyatt v. Raymond, 2012 U.S. Dist. LEXIS 58879, at *16 (S.D.N.Y. Apr. 25, 2012) (collecting cases approving $400 to $650 hourly rates for partners in copyright and trademark cases); Bass v. Diversity Inc. Media, No. 19-cv-2261 (AJN), 2020 U.S. Dist. LEXIS 93318, at *14 (S.D.N.Y. May 28, 2020) ("A review of cases in this District and in the Eastern District of New York suggests that courts have approved associate rates of $350 and up to $500 for partners in copyright cases."); Tetra Images, LLC v. Grahall Partners, LLC, No. 19-CV-05250 (PMH), 2021 U.S. Dist. LEXIS 125809, at *10-11 (S.D.N.Y. July 6, 2021) (in copyright infringement case, finding $475.00 hourly rate for managing partner in Florida and $450.00 hourly rate for partner in New York office to be reasonable); McLaughlin v. IDT Energy, No. 14 CV 4107 (ENV)(RML), 2018 U.S. Dist. LEXIS 128347, at *51-53 (E.D.N.Y. July 30, 2018) (finding award of rates typical to the Eastern District and noted to be: "$550 for partners/equity owners with more than thirty years of experience, $500 for partners/equity owners with more than fifteen years of experience, $450 for partners/equity owners with more than ten years of experience, $400 for senior associates/associates with more than ten years of experience, $350 for senior associates/associates with six to nine years of experience, $300 for associates with three to five years of experience, $250 for associates with fewer than three years of experience"); Schwartz v. United States DEA, No. 13-CV-5004 (CBA)

(ST), 2019 U.S. Dist. LEXIS 34165, at *26-27 (E.D.N.Y. Mar. 1, 2019) (awarding $500 hourly fee to partner litigating FOIA litigation, and listing awards of between $500 and $655 per hour for partners handling complex litigation); Nat'l Envtl. Saf. Co. v. Katz, No. 18-cv-02161 (JMA) (GRB), 2019 U.S. Dist. LEXIS 76044, at *5 (E.D.N.Y. May 6, 2019) (award based upon $500-$600 hourly rate to partners and $300 hourly rate for associates litigating breach of contract case).

Mr. DeSouza is a 2004 graduate of the George Washington University Law School who is admitted to both the Florida Bar and the New York Bar. He previously worked at Milbank, Tweed, Hadley & McCloy LLP (from 2004 – 2010) and Becker & Poliakoff, PA (from 2010 – 2014) before forming DeSouza Law, PA in 2014 and jointly forming CopyCat Legal PLLC in 2019. He is admitted to a multitude of federal courts throughout the country and has extensive experience litigating cases in both federal and state court.

In addition to Mr. DeSouza, a junior associate (Lauren Hausman) also billed time on this matter. She is a 2021 graduate of Elon University School of Law. She graduated third in her class with magna cum laude distinction, served on law review, and is in the Order of Barristers. She is admitted to the Florida Bar, the California Bar, the United States District Court for the Southern District of Florida, the United States District Court for the Middle District of Florida, the United States District Court for the District of New Mexico, and the United States District Court for the Central District of California. The Court thus finds that $325.00 is a reasonable hourly rate for Ms. Hausman.

Given the above, the Court has calculated the lodestar amount to be $3,295.00.

### F.     *Permanent Injunction*

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising

under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. "Injunctions are regularly issued pursuant to Section 502 because 'the public interest is the interest in upholding copyright protections;' and courts also regularly issue injunctions as part of default judgements." Prepared Food Photos, Inc. v. Silver Star of Brook., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037, at *22 (E.D.N.Y. Jan. 23, 2023) (quoting Arista Records, Inc. v. Beker Enters., 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003)).

Here, Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's Work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the Work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's work if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for its own commercial purposes without paying any fee at all.

Accordingly, this Court will enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by

Plaintiff.

**III.    Conclusion**

Judgment is hereby entered in favor of Plaintiff, Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. and against defendant The Dugout N.Y. LLC as follows:

1.    Plaintiff shall recover from Defendant the principal sum of **$51,850.74** for which let execution issue. The foregoing sum consists of $47,952.00 (statutory damages for copyright infringement), $603.74 (costs), and $3,295.00 (attorneys' fees).

2.    Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant are permanently enjoined from (a) directly or indirectly infringing Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any work derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

3.    The Court will retain jurisdiction to enforce the Final Judgment and Permanent Injunction and consider any motion for attorney's fees, expenses, and costs.

**DONE AND ORDERED** in Chambers in New York, New York this __ day of _____, 2023.

_____
Jessica G. L. Clarke
United States District Judge